# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS
# EASTERN DIVISION

| | |
|---|---|
| SCOTT WOODS and ) <br> SHIHYUN WOODS ) <br> ) <br> Plaintiffs, ) <br> v. ) <br> ) <br> ) <br> TESLA ) <br> ) <br> Defendant. ) | CIVIL ACTION NO. 1:20-cv-10162 <br><br> MEMORANDUM OF LAW <br> IN SUPPORT OF <br> DEFENDANT'S MOTION <br> TO DISMISS COUNT I |

This memorandum of law is submitted by Defendant Tesla, Inc. (incorrectly named herein as Tesla), by and through its attorneys, RoseWaldorf PLLC, in support of its motion for an Order, pursuant to Rule 12(b)(6) of the Rules of Civil Procedure, dismissing Count I of the Complaint of Plaintiffs Scott Woods and Shihyun Woods ("Plaintiffs") with prejudice.

## FACTUAL BACKGROUND

On or about December 11, 2019, Plaintiffs Scott Woods and Shihyun Woods ("Plaintiffs") filed the state action as against Defendant Tesla, Inc. In the Complaint, Plaintiffs asserted claims for violation of G.L. c. 90 §7N1/2 (the "Lemon Law"), breach of express and implied warranties under the Magnuson-Moss Warranty Act and derivative claims for violation of G.L. c. 93A. These claims are all based upon allegations that Plaintiffs' 2017 Tesla Model S, VIN: 5YJSA1E2XHF204291 ("subject vehicle") contained certain defects that were not timely repaired pursuant to the Tesla written limited warranty (Complaint, Dkt. No. 1-1).

Plaintiffs allege that "[w]ithin the warranty period, Plaintiffs complained to Defendant,

- 1 -

either directly or through its agents, on at least three occasions, about defects or non-conformities in the Vehicle, including but not limited to: doors; rear seats; key fob; head lights; turn signals; column control module and inoperative blue tooth" (*see* Complaint ¶ 17, Dkt. 1-1). In support of the claim under the Lemon Law, which applies only to repair attempts during a "period of protection" of the first year or 15,000 miles from original delivery (whichever comes first), Plaintiffs allege in conclusory fashion that Defendant "made three or more repair attempts to address the same general defect in the Vehicle without success" and that Defendant "kept the Vehicle out of service for repair for 15 business days or more during the first year or 15,000 miles" (*see* Complaint ¶ 24, Dkt. 1-1).

Rather than allege facts concerning the specific repair visits, Plaintiffs reference and attach to the Complaint "all invoices in Plaintiff's possession" (*id*.; *see also* Repair Invoices attached as Exhibit "B" to the Complaint). In addition, Plaintiffs attach to the Complaint a copy of correspondence alleged to have been forwarded to Defendant by Plaintiffs' counsel that outlines the alleged repair attempts made to the subject vehicle (*see* Letter, dated November 5, 2019, Exhibit "C" the Complaint, Dkt. 1-1).

Taken together, and ignoring Plaintiffs' conclusory allegations, it is undisputed that only two repair attempts occurred during the Lemon Law period of protection (on August 17, 2018 at 11,942 miles and on September 8, 2018 at 13,206 miles). In addition, it is undisputed that Plaintiffs did not complain about the *same* defects during these two visits. Furthermore, according to the repair orders, the vehicle remained at the service center for at most seven (7) calendar days during these two visits (the invoice dated August 17, 2018 shows that the vehicle was "ready" on August 22, 2018 and the invoice dated September 8, 2018 shows the vehicle was "ready" on the same day) (*see* Exhibit "B" to the Complaint). More importantly, all of the alleged complaints were trivial in

nature. At the very least, despite the alleged concerns with the subject vehicle, Plaintiffs were able to drive the vehicle over 18,000 miles between August 17, 2018 and September 13, 2019 (*see* Letter, dated November 5, 2019, Exhibit "C" to the Complaint).

On January 27, 2020, Defendant properly and timely removed the state action to this Court (Dkt. No. 1). Shortly following removal, the undersigned counsel attempted to meet and confer with Plaintiffs' counsel in order to discuss the dismissal of the claim under the Lemon Law (*see* Letter, dated January 28, 2020, Exhibit "A" to the Motion). Plaintiffs' counsel did not respond and therefore, by email, dated January 30, 2020, the undersigned counsel for Defendant attempted again to discuss this matter with Plaintiffs' counsel (*see* Email dated January 30, 2020, Exhibit "B" to the Motion). Once again, Plaintiffs' counsel did not respond.

## **STANDARD**

To avoid dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must plead enough facts to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility when the plaintiff pleads sufficient factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (U.S. 2009). Plaintiffs' obligation to provide the "grounds" for entitlement to relief requires "more than labels and conclusions" and more than "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555, 127 S.Ct. at 1964-65. Moreover, in order to survive a motion to dismiss, a complaint must include "enough detail to provide a defendant with fair notice of what the claim is and the grounds upon which it rests." *Freeman v. Town of Hudson*, 714 F.3d 29, 35 (1st Cir. 2013) (citations omitted). In addition, the court "may supplement the facts contained in the pleadings by considering documents central to plaintiff's claims and documents sufficiently

referenced in the complaint." *Ivymedia Corporation v. iLIKEBUS, Inc.*, 2015 WL 4254387 (D.Mass.2015) citing *Curran v. Cousins*, 509 F.3d 36, 44 (1st Cir.2007).

## ARGUMENT

### I. THE COMPLAINT FAILS TO PLEAD SUFFICIENT FACTS TO STATE A PLAUSIBLE CLAIM FOR RELIEF FOR VIOLATION OF THE LEMON LAW

Pursuant to G.L. c. 90 § 7N1/2, the Massachusetts New Vehicle Lemon Law, if "a motor vehicle does not conform to any applicable express or implied warranty, and the consumer reports the nonconformity to the manufacturer of the vehicle, its agent or its authorized dealer during the term of protection, the manufacturer, its agent or its authorized dealer shall effect such repairs as are necessary to conform the vehicle to such warranty." *See Jackson v. American Honda Motor Co., Inc.*, 75 Mass.App.Ct. 1102 (Mass.App. 2009) quoting G.L. c. 90 § 7N1/2(2). The statute defines "term of protection" as "one year or fifteen thousand miles of use from the date of original delivery of a new motor vehicle, whichever comes first . . . ." G.L. c. 90 §7N1/2(1).

"Furthermore, if the manufacturer, its agent or authorized dealer does not cure such nonconformity after 'a reasonable number of attempts, the manufacturer shall accept return of the vehicle from the consumer.'" *Id*. quoting G.L. c. 90 § 7N1/2(3). The New Vehicle Lemon Law defines a "reasonable number of attempts" as follows:

> If (a) the same nonconformity has been subject to repair three or more times by the manufacturer or its agents or authorized dealers within the term of protection, but such nonconformity continues to exist or such nonconformity has recurred within the term of protection, or (b) the vehicle is out of service by reason of repair of any nonconformity for a cumulative total of fifteen or more business days during the term of protection, provided, however, that the manufacturer shall be afforded one additional opportunity, not to exceed seven business days, to cure any nonconformity arising during the term of protection, notwithstanding the fact that such additional opportunity to cure commences after the term of protection. Such additional opportunity to cure shall commence on the day the manufacturer first knows or should have known that the limits specified in clause (a) or (b) have been met or exceeded. . .

- 4 -

G.L. c. 90 § 7N1/2(4).

Therefore, the consumer must show that either the *same* nonconformity was subject to repair three or more times during the first 15,000 miles or the vehicle was out of service for repairs for 15 business days or more during the first 15,000 miles *and* that the vehicle remained unrepaired after an additional final repair opportunity by the manufacturer. *See General Motors Corp. v. Blackburn*, 403 Mass. 320, 322 (Mass.1988). Furthermore, the Lemon Law only applies where the issues with the vehicle are significant, as the statute defines "nonconformities" that may give rise to a violation of the statute as follows: "any specific or generic defect or malfunction, or any concurrent combination of such defects or malfunctions *that substantially impairs the use, market value or safety of a motor vehicle*." G.L. c. 90 § 7N1/2(1) (emphasis added).

> **A. Plaintiffs have Failed to Allege that the Specific Concerns Giving Rise to their Claim for Violation of the New Vehicle Lemon Law Substantially Impaired the Use, Market Value or Safety of the Subject Vehicle.**

In the Complaint, Plaintiffs allege that following their purchase of the subject vehicle, they began to experience a variety of concerns with the subject vehicle "including but not limited to: doors; rear seats; key fob; head lights; turn signals; column control module and inoperative blue tooth" (*see* Complaint ¶ 17). Plaintiffs do not allege which, if any, of these alleged concerns "substantially impair[ed] the use, market value, or safety" of the subject vehicle. Therefore, Plaintiffs have failed to allege which of their concerns are "nonconformities" as defined by the statute. *See* G.L. c. 90 § 7N1/2(1). Furthermore, the issues allegedly subject to repairs during the Lemon Law's period of protection do not *plausibly* suggest a substantial impairment to the use, value or safety of the subject vehicle, as these consist of mostly trivial cosmetic issues.[1]

---

[1] According to the letter forwarded by Plaintiffs, dated November 5, 2019, during the August 17, 2018 visit, the complaints made related to the door being hard to open, an issue with a piece of trim and a cut on the rear seat. During

Therefore, as a preliminary matter, Plaintiffs have failed to sufficiently allege that the concerns they claim to have experienced with the vehicle, fall within the scope of the Lemon Law. Accordingly, Count I should be dismissed for this reason alone.

> **B. Even if Plaintiffs Alleged that their Concerns Substantially Impaired the Use, Market Value or Safety of the Subject Vehicle, Plaintiffs have Failed to Allege Sufficient Facts to Plausibly Suggest that Any Such Concerns were Subject to a Reasonable Number of Repair Attempts and Continued to Exist.**

On a motion to dismiss, "a court ignores conclusory allegations mirroring legal standards." *See Hannigan v. Bank of Am., N.A.,* 48 F.Supp.3d 135, 140 (D.Mass.2014) citing *Manning v. Boston Medical Ctr. Corp.,* 725 F.3d 34, 43 (1st Citr.2013). Therefore, this Court may ignore Plaintiffs' conclusory allegations that Defendant "made three or more repair attempts to address the same general defect in the Vehicle without success" and that Defendant "kept the Vehicle out of service for repair for 15 business days or more during the first year or 15,000 miles" as these allegations simply mirror the language of the statute (*see* Complaint ¶ 24, Dkt. 1-1).

A review of the repair orders and correspondence drafted by Plaintiffs' counsel attached to the Complaint,[2] however, demonstrates that Plaintiffs have not and cannot demonstrate that they provided Defendant with a "reasonable number of attempts" as that term is defined by the statute. Specifically, it is undisputed that only two repair attempts occurred during the first 15,000 miles; on August 17, 2018 at 11,942 miles and on September 8, 2018 at 13,206 miles (*see* Repair Orders, attached as Exhibit "B" to the Complaint; *see also* Plaintiffs' summary of the repair history

---

the September 8, 2018 visit, the complaints made related to one of the keys not being recognized and a concern that the headlight would remain on when charging (*see* Exhibit "C" to the Complaint). None of these issues hindered Plaintiffs' ability to drive the vehicle over 1,200 miles in the few weeks between the August 22, 2018 and September 8, 2018 repair visits.

[2] In addition to reviewing the allegations of the Complaint, "[a] court may consider documents attached to or incorporated in the complaint and other documents. *See Hannigan,* 48 F.Supp.3d at 140 citing *Wilborn v. Walsh*, 584 F.Supp.2d 384, 386 (D.Mass.2008).

- 6 -

contained in Exhibit "C" of the Complaint). Quite simply, therefore, with only two visits during the period of protection,[3] Plaintiffs have not and cannot allege sufficient facts to plausibly suggest the same defect was subject to repair at least three times.

Furthermore, according to the repair orders, the vehicle remained at the service center for at most seven (7) calendar days during these two visits; as the invoice dated August 17, 2018 shows that the vehicle was "ready" on August 22, 2018 and the invoice dated September 8, 2018 shows the vehicle was "ready" on the same day (*see* Exhibit "B" to the Complaint). Accordingly, Plaintiffs have not and cannot demonstrate that the subject vehicle remained "out of service by reason of repair" for fifteen or more *business* days during the period of protection.

Moreover, Plaintiffs do not even allege that Defendant was afforded a final repair attempt and that any nonconformity continued to exist thereafter as required under the statute. *See* G.L. c. 90 § 7N1/2(4). Therefore, Plaintiffs cannot demonstrate the threshold element that a reasonable number of repair attempts has occurred during the period of protection and that the vehicle remains unrepaired. Based on the foregoing, Count I should be dismissed accordingly for this additional and independent reason.

**II. PLAINTIFFS' CLAIMS FOR VIOLATION OF THE LEMON LAW (COUNT I) MUST BE DISMISSED FOR THE INDEPENDENT GROUNDS THAT PLAINTIFFS FAILED TO PROCEED WITH STATE-CERTIFIED NEW CAR ARBITRATION PRIOR TO COMMENCING THIS ACTION**

Even assuming Plaintiffs asserted sufficient facts to state a claim for violation of the Lemon Law, Plaintiffs failed to first resort to state-certified, new car arbitration before commencing an action as required under the statute. G.L. c. 90 § 7N1/2(6) sets forth the manner in which a consumer may enforce his or her rights under the statute. This section requires that manufacturers

---

[3] Moreover, it is undisputed that Plaintiffs did not complain about the same defects during these two visits.

- 7 -

to "submit to state-certified, new car arbitration, if such arbitration is requested by the consumer within eighteen months from the date of original delivery to such consumer of a new motor vehicle." The arbitrator then issues a "written finding" of whether the vehicle meets the standard for those required to be replaced or refunded. *Id*. Such findings of fact from the state-certified arbitration "shall be taken as prima facie evidence of whether the standards set forth in this section for vehicles required to be refunded or replaced have been met in any subsequent action brought by either party ensuing from the matter considered at arbitration."

The statute further provides that if the vehicle is found "by state-certified, new car arbitration to have met the standards set forth by this section for vehicles required to be replaced or refunded, and if the manufacturer of said motor vehicle is found to have failed to provide said refund or replacement as required" the manufacturer will then have twenty-one (21) days from the date of the award to either issue the refund or replacement or file an appeal to the superior court. In addition, "[a]ny consumer dissatisfied with any finding of state-certified, new car arbitration shall have the right to file a claim pursuant to chapter ninety-three A." *Id*.; *see also General Motors Corp. v. Blackburn,* 403 Mass. 320, 322-323 (Mass.1988) (outlining the procedure by which a consumer may enforce rights under the Lemon Law).

Importantly, the statute contains *no* provision affording a consumer a private right of action to enforce any provision of the New Vehicle Lemon Law in court without first resorting to the state-certified new car arbitration. Instead, only the attorney general may bring a direct action for violation of the statute. *See* § 7N1/2(8).

Under the unambiguous language of the statute, therefore, there is no direct right of a consumer to bring an action asserting violation of the New Vehicle Lemon Law. The *only* action that may be commenced by a consumer under the statute is a "claim pursuant to chapter ninety-

three A" and even then, such claim can only arise when the consumer is "dissatisfied with any finding of state-certified, new car arbitration." *See* § 7N1/2(6).

In this case, Plaintiffs have not (nor have they alleged) that they first requested state-certified new car arbitration before commencing this action. Therefore, by the clear terms of the Lemon Law, Plaintiffs cannot commence any action seeking relief under the statute, whether as a violation of the statute itself, or as a derivative claim under c. 93A. Therefore, Plaintiffs' claims for violation of the New Vehicle Lemon Law (Count I) must be dismissed.

## CONCLUSION

For all the foregoing reasons, Defendant Tesla, Inc. respectfully requests that this Court dismiss Count I of the Complaint, with prejudice, together with such other and further relief as this Court deems just and proper.

Dated: Albany, New York  
February 3, 2020

ROSEWALDORF PLLC

By: *s/ Mark W. Skanes*  
Mark W. Skanes, Esq.  
Attorneys for Defendant  
Tesla, Inc.  
501 New Karner Rd.  
Albany, New York 12205  
Phone: (518) 869-9200  
Fax: (518) 869-3334  
mskanes@rosewaldorf.com

## **CERTIFICATE OF SERVICE**

      I hereby certify that this document, filed through the ECF system on this date will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered.

Dated:  Albany, New York
         February 3, 2020

                                    *s/ Mark W. Skanes*
                                Mark W. Skanes, Esq. (BBO # 675638)