UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

SCOTT WOODS and
SHIHYUN WOODS,
    Plaintiffs,

    v.                                      CIVIL ACTION NO. 20-10162-FDS

TESLA,[1]
    Defendant.

REPORT AND RECOMMENDATION ON
DEFENDANT TESLA, INC.'S MOTION TO DISMISS
<u>COUNT I OF THE COMPLAINT (#6)</u>.

KELLEY, U.S.M.J

I. <u>Introduction</u>.

Plaintiffs, Scott and Shihyun Woods, brought this action against defendant Tesla to recover damages allegedly arising from their purchase of a 2017 Tesla Model S 100D. The complaint includes claims for violation of the Massachusetts New Vehicle Lemon Law ("Lemon Law")[2]

---

[1] In the complaint, defendant is named as Tesla. Defendant states its proper name is Tesla, Inc.

[2] Under the Used Vehicle Lemon Law, a "[u]sed motor vehicle" or "used vehicle" is defined to include "any vehicle driven more than the limited use necessary in moving or road testing a new vehicle prior to delivery to a consumer, including a demonstrator vehicle [.]" Mass. Gen. L. c. 90, § 7N ¼. Given this definition, the parties were ordered to brief the issue of whether the New Vehicle Lemon Law or the Used Vehicle Lemon Law was applicable in Count I. (#17.) Plaintiffs argue that both laws may apply, but that consumers "may be required to seek relief under the New Vehicle Lemon Law before seeking enforcement of rights under the Used Vehicle Lemon Law." (#19 at 3.) Defendant concurs that consumers must first resort to the New Vehicle Lemon Law, stating plaintiffs' position on this question "is correct." (#24 at 2.) In light of this agreement, the

1

(Count I), breach of warranty under the Magnuson-Moss Warranty Act (Count II), and violation of Massachusetts General Laws chapter 93A (Count III). (#1-1.) Before the court is Tesla's motion to dismiss Count I (#6), which has been fully briefed. (##7, 10, 14.)

## II. Facts.

On or about June 19, 2018, the Woods purchased a 2017 Tesla Model S 100D from Tesla Motors Massachusetts, Inc. for $114,250.00. (#1-1 ¶¶ 7, 10; *see* #1-1 at 13-19 (purchase agreement).) The vehicle, which had 8,828 miles on the odometer at the time it was delivered to the Woods, was sold as a "[n]ew-[p]revious service/demo vehicle." *Id*. at 13. After purchasing the Tesla, the Woods experienced numerous malfunctions requiring them repeatedly to bring their vehicle for repairs to a Tesla dealership. *Id*. ¶ 17. From June 19, 2018, to December 3, 2019, the Woods brought their Tesla for repairs on no fewer than thirteen occasions, complaining of a variety of problems, including difficulty opening the rear right door, *id.* at 20; damage to the sill plates on the doors and the trunk, *id.* at 21; malfunction of the key fob, *id.* at 24, 40; malfunction of the passenger's side daytime running lights (DRL)[3], *id*. at 24, 26, 29, 33, 38, 41, 45; slow internet browsing, *id*. at 31, 37; Bluetooth connectivity issues, *id.* at 38, 41, 46; malfunction of the turn signals while operating in autopilot, *id.* at 37, 42; malfunction of auto wipers, *id*. at 30; misalignment of the driver's door brightwork and left belt molding, *id.* at 25, 30; and malfunction of the dash camera, *id*. at 33. Most of the problems were fixed promptly and without charge as required by the express warranty, while others could either not be duplicated by service technicians or were not identified as defects in need of repair. *Id*. at 20-52.

---

analysis of the motion to dismiss will be limited to the legal viability of the claim under the New Vehicle Lemon Law.

[3] The records show Tesla technicians acknowledged that the issue concerning the DRL light was recurring. (#1-1 at 38.)

On November 5, 2019, the Woods sent Tesla a chapter 93A demand letter requesting rescission of the original purchase agreement, reimbursement for any and all damages, including attorney's fees, double or treble damages, and interest. (#1-1 ¶ 21; *see also* #1-1 at 53-58 (demand letter).) In December 2019, the Woods filed a state action against Tesla in the Bristol County Superior Court. (#1-1 at 6.) On January 27, 2020, Tesla removed the case to federal court (#1) and then filed the motion to dismiss Count I of the complaint on February 3, 2020. (#6.)

It is recommended that defendant's motion to dismiss be denied. While dismissal may be warranted on Count I on a summary judgment motion following discovery, plaintiffs have alleged facts sufficient to state a plausible claim for relief under the Lemon Law to survive this initial challenge.

### III. Legal Standard.

A Rule 12(b)(6) motion to dismiss challenges a party's complaint for failing to state a claim.  In deciding such a motion, a court must "treat all well-pleaded facts in the complaint as true and draw all reasonable inferences in favor of the plaintiff." *In re Fin. Oversight & Mgmt. Bd. for P.R.*, 919 F.3d 121, 127 (1st Cir. 2019) (citing *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 7 (1st Cir. 2011)).  When considering a motion to dismiss, a court "may augment these facts and inferences with data points gleaned from documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice." *A.G. ex rel. Maddox v. Elsevier, Inc.*, 732 F.3d 77, 80 (1st Cir. 2013) (citing *Haley v. City of Bos.*, 657 F.3d 39, 46 (1st Cir. 2011)).

In order to survive a motion to dismiss under Rule 12(b)(6), the plaintiff must provide "enough facts to state a claim to relief that is plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The "obligation to provide the grounds of [the plaintiff's] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a

cause of action will not do." *Id.* at 555 (internal quotation marks and alteration omitted). The "[f]actual allegations must be enough to raise a right to relief above the speculative level," and to cross the "line from conceivable to plausible[.]" *Id.* at 555, 570.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). However, the court is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555). Simply put, the court should assume that well-pleaded facts are genuine and then determine whether such facts state a plausible claim for relief. *Id.* at 679.

## IV. Discussion.

The Lemon Law provides: "If a motor vehicle does not conform to any applicable express or implied warranty, and the consumer reports the nonconformity to the manufacturer of the vehicle, its agent or its authorized dealer during the term of protection, the manufacturer, its agent or its authorized dealer shall effect such repairs as are necessary to conform the vehicle to such warranty." Mass. Gen. L. c. 90, § 7N 1/2 (2). The statute defines "[n]onconformity" to include "any specific or generic defect or malfunction, or any concurrent combination of such defects or malfunctions that substantially impairs the use, market value or safety of a motor vehicle." *Id.* § 7N 1/2 (1). The applicable term of protection for a new vehicle is "one year or fifteen thousand miles of use from the date of original delivery of a new motor vehicle, whichever comes first[.]" *Id.*

Under the statute, "[i]f the manufacturer, its agent or authorized dealer does not conform the motor vehicle to any such applicable express or implied warranty by curing any nonconformity

after a reasonable number of attempts, the manufacturer shall accept return of the vehicle from the consumer." *Id.* § 7N 1/2 (3). A reasonable number of attempts occurs either when:

> (a) the same nonconformity has been subject to repair three or more times by the manufacturer or its agents or authorized dealers within the term of protection, but such nonconformity continues to exist or such nonconformity has recurred within the term of protection, or (b) the vehicle is out of service by reason of repair of any nonconformity for a cumulative total of fifteen or more business days during the term of protection[.]

*Id.* § 7N 1/2 (4). The statute further provides "that the manufacturer shall be afforded one additional opportunity, not to exceed seven business days, to cure any nonconformity arising during the term of protection, notwithstanding the fact that such additional opportunity to cure commences after the term of protection." *Id.*

### A. Insufficient Allegations.

Tesla contends that the Woods cannot meet the requirements of the statute because they "made only two repair visits during the first 15,000 miles." (#6-1 at 2.) Plaintiffs argue that "[t]he date and mileage at the time of original delivery, or when the Vehicle was first put into regular use as a '[p]revious service/demo vehicle[,]' are unknown," so it cannot be determined how many repairs were made within the period of protection without discovery. (#10-1 at 7.) Defendant counters that "the date of delivery is not dispositive as the 15,000 mile limit of the term of protection was reached first." (#14 at 4.) [4]

---

[4] A publication issued by the Governor's Office and the Office of Consumer Affairs and Business Regulation, *A Dealer's Guide To The Massachusetts Used Vehicle Warranty Law,* explains:

> **Demonstrator/fleet/executive vehicles are covered by the Used Vehicle Warranty Law** but consumers who qualify for both new and used car arbitration must seek relief from the manufacturer under the new car Lemon Law before seeking relief from you under the Used Vehicle Warranty Law.
>
> When a consumer buys a demonstrator/fleet/executive vehicle, the new car Lemon Law, G.L. c. 90, §7N ½ covers the vehicle for the remainder of the

It is alleged in the complaint that "[d]efendant, through its authorized repair agent(s), made three or more repair attempts to address the same general defect in the Vehicle without success." (#1-1 ¶ 23.) While the records appended to the complaint reflect only two repair visits during the first 15,000 miles, plaintiffs allege that "the Vehicle has been subject to additional repair attempts for defects and conditions [d]efendant's warranty dealer failed to document," (#1-1 ¶ 18); that "[d]efendant's warranty dealer failed to provide to [p]laintiff [sic] with all warranty repair receipts that were generated, or should have been generated, in conjunction with repairs or repair attempts on the Vehicle," *id.* ¶ 19; and "[d]efendant failed to provide [p]laintiff with accurate warranty receipts of each and every repair attempted on the Vehicle." *Id.* ¶ 25.  These allegations are fairly boilerplate and do not contend specifically that these service calls occurred within the period of protection. However, taking the allegations in the light most favorable to plaintiffs, it is a fair inference that the Woods are asserting the requisite number of repair visits occurred with the designated time frame. Plaintiffs have alleged a sufficient factual basis to state a plausible claim under the Lemon Law. *See Manning v. Bos. Med. Ctr. Corp.*, 725 F.3d 34, 43 (1st Cir. 2013) (internal citations and quotation marks omitted) ("The relevant question . . . in assessing plausibility is not whether the complaint makes any particular factual allegations but, rather, whether the complaint warrant[s] dismissal because it failed in toto to render plaintiffs' entitlement to relief plausible."); *Rodriguez-Reyes v. Molina-Rodriguez*, 711 F.3d 49, 53 (1st Cir. 2013); *Grajales v. P.R. Ports Auth.*, 682 F.3d 40, 44-45 (1st Cir. 2012).

---

first year from the date the dealer or manufacturer first puts the vehicle into regular use (the "in-service" date), or 15,000 miles, whichever comes first.

www.springfield-ma.gov/cos/fileadmin/law/License_Commission/Dealer%E2%80%99s_Guide_to_the_Massachusetts_Used_Vehicle_Warranty_Law.pdf.

The same is true with respect to the allegation that Tesla "kept the Vehicle out of service for repair 15 business days or more during the first year or 15,000." (#1-1 ¶ 24.) Even if the repair records appended to the complaint do not reflect fifteen business days out of service within the relevant period, when coupled with the allegations that additional repair attempts had been made on the the vehicle and defendant did not provide plaintiffs with all of the receipts for all of the repairs undertaken, taking all inferences in favor of plaintiffs, there is an adequate factual basis alleged to state a Lemon Law claim. The case should be permitted to advance to the discovery stage. *See Grajales*, 682 F.3d at 49 (quoting *Ocasio-Hernandez*, 640 F.3d at 17 ("The plausibility threshold 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal conduct.'").)

Tesla also contends that the claimed issues could not rise to the level of nonconformities that substantially impaired the use, market value, or safety of the vehicle as a matter of law. (#14, at 3.) This is an affirmative defense under the statute. *See* Mass. Gen. L. c. 90, § 7N ½ (3) ("It shall be an affirmative defense to any claim under this section . . . that an alleged nonconformity does not substantially impair the use, market value or safety of the vehicle[.]"). Whether the alleged nonconformities substantially impaired the value of the vehicle cannot be resolved at the pleading stage. "[I]n the proper circumstances, even cosmetic or minor defects that go unrepaired despite a number of complaints or attempts at repair . . . can substantially impair the goods' value to the buyer." *Fortin v. Ox–Bow Marina, Inc.*, 408 Mass. 310, 317 (1990). In this case, a negative impact on the market value of a $114,000 luxury car could reasonably be inferred if that vehicle experienced numerous nonconformities, even if minor. *See McCarthy v. Quirk Nissan, Inc.*, 2009 Mass. App. Div. 159, 2009 WL 3004563, at *5 n.5 (Sept. 15, 2009) ("[O]ur courts have not generally required complete mechanical uselessness before a defect may be deemed to be within

7

the purview of the Lemon Law [Mass. Gen. L. c. 90, § 7N 1/4]."); *see* 201 Mass. Code Regs. 11.11(9) (When determining whether "nonconformity(s) complained of substantially impairs the use, market value, or safety of the vehicle [Mass. Gen. L. c. 90, § 7N 1/2], the arbitrator shall consider the entirety of the circumstances in each case.").

### B. Arbitration.

As a second, independent basis for dismissal, Tesla argues that the Lemon Law required the Woods to engage in state-certified arbitration before commencing an action in court. (#14 at 3.) Having failed to do so, according to Tesla, Count I should be dismissed.

The Lemon Law is consumer-oriented. The statute provides, in relevant part, that "[a]ll manufacturers shall submit to state-certified, new car arbitration, if such arbitration is requested by the consumer within eighteen months from the date of original delivery to such consumer of a new motor vehicle." Mass. Gen. L. c. 90, § 7N 1/2 (6). The Lemon Law mandates only that the manufacturer must submit to arbitration if the consumer demands it, not that the consumer is required to seek arbitration. The plain terms of the statute statute do not suggest that arbitration is mandatory, or a prerequisite before filing a civil action. *See Field v. Napolitano*, 663 F.3d 505, 511 (1st Cir. 2011) (noting that when statutory language is plain, court must enforce it according to its terms); *Commonwealth v. Kennedy*, 435 Mass. 527, 530 (2001) ("Where the statutory language is clear, courts apply the plain and ordinary meaning of that language.").

Tesla relies on *General Motors Corp. v. Blackburn*, 403 Mass. 320 (1988), as "outlining the procedure by which a consumer may enforce rights under the Lemon Law." (#14 at 1.) In *General Motors*, the Massachusetts Supreme Judicial Court restated the process detailed in the Lemon Law for those consumers who decide to seek arbitration:

> Consumers are not required to give notice directly to the manufacturer of the existence of any nonconformity before seeking arbitration. G.L. c. 90, § 7N 1/2 (5).

8

> If a consumer files for arbitration within the applicable time limit, the manufacturer is required to submit thereto. G.L. c. 90, § 7N 1/2 (6). Arbitration is performed by a professional arbitrator or arbitration firm appointed by the Secretary of Consumer Affairs. G.L. c. 90, § 7N 1/2 (6). In any subsequent action, the findings of fact issued by the arbitrator are taken as prima facie evidence. G.L. c. 90, § 7N 1/2 (6). The statute also provides a procedure for an appeal to the Superior Court of the arbitrator's decision, G.L. c. 90, § 7N 1/2 (6), and a sanction if a manufacturer fails to comply with the arbitrator's decision. G.L. c. 90, § 7N 1/2 (8).

*Id.* at 323. There is no suggestion in *General Motors* that this is only procedure by which a consumer may seek redress under the Lemon Law, or that participation in state-certified arbitration is compulsory before commencing an action in court.[5]

The Lemon Law provides that "[n]othing in this section shall be construed to limit the rights or remedies which are otherwise available to a consumer or manufacturer under any other applicable provision of law." Mass. Gen. L. c. 90, § 7N 1/2. The Massachusetts Office of Consumer Affairs and Business Regulation (OCABR) has issued guidance to consumers regarding the state lemon laws. *See* https://www.mass.gov/orgs/office-of-consumer-affairs-and-business-regulation (last visited 06/22/2020). "If the manufacturer refuses to refund you or replace your vehicle, you can seek arbitration, mediation, or file suit in court." Guide to New Car Lemon Law, https://www.mass.gov/guides/guide-to-new-car-lemon-law (last visted 06/22/2020); *see also*

---

[5] In part, the Lemon Law provides:

> If eighty-one days has elapsed from the issuance of a finding in favor of the consumer of the state-certified, new car arbitration and no appeal has been taken and no award delivered and no fine paid, the attorney general shall initiate proceedings against said manufacturer for failure to pay said fine. The proceedings initiated pursuant to the provisions of this section shall be commenced in [the] uperior court department of the trial court.

Mass. Gen. L. c. 90, § 7N 1/2 (8). That the attorney general is empowered to bring suit in aid of the consumer to enforce an arbitration award does not foreclose a consumer from filing suit in the first instance rather than participating in state-certified arbitration.

9

*Motor Vehicle Complaints Under Chapter 93A*, RR MA-CLE 9-1 (3rd Ed. 2014 with 2016 and 2019 supplements)("If the manufacturer will not refund his or her money or replace the vehicle, the consumer has several options, including mediation, arbitration, or filing suit in court."). Further, there is caselaw reflecting that consumers commence litigation without first engaging in arbitration. *See*, *e.g.*, *Jackson v. Am. Honda Motor Co., Inc.*, No. 08-P-956, 912 N.E.2d 550 (Table), 2009 WL 2778268 (Mass. App. Ct. Sept. 3, 2009); *Finigan-Mirisola v. DaimlerChrysler Corp.*, No. 06-P-1168, 869 N.E.2d 632 (Table), 2007 WL 1977505 (Mass. App. Ct. July 9, 2007).

Tesla's argument that arbitration is a mandatory predicate to initiating suit is unavailing. The statute provides for arbitration as an initial alternative to litigation. Whether to request arbitration is an option for a consumer, not a prerequisite to filing a lawsuit. The motion to dismiss for failure to seek arbitration should be denied.

## V. Conclusion.

For the reasons stated, I RECOMMEND that Defendant Tesla, Inc.'s Motion to Dismiss Count I of the Complaint (#6) be DENIED.

## VI. Review by District Judge.

The parties are hereby advised that any party who objects to this recommendation must file a specific written objection thereto with the Clerk of this Court within 14 days of service of this Report and Recommendation. The written objections must specifically identify the portion of the recommendations, or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b), Fed. R. Civ. P., shall preclude further appellate review. *See Keating v. Sec'y of Health & Human Servs.*, 848 F.2d 271 (1st Cir. 1988); *U.S. v. Emiliano Valencia-Copete*, 792 F.2d 4 (1st Cir. 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st

Cir. 1983); *U.S. v. Vega*, 678 F.2d 376, 378–79 (1st Cir. 1982); *Park Manor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603 (1st Cir. 1980); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

June 23, 2020                                                                                           /s/ M. Page Kelley
                                                                                                        M. Page Kelley
                                                                                                        United States Magistrate Judge